# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

FERNANDO C. C.,[1]                   3:18-cv-01728-BR

        Plaintiff,               OPINION AND ORDER

v.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

**NANCY J. MESEROW**
7540 S.W. 51st Ave.
Portland, OR 97219
(503) 560-6788

        Attorney for Plaintiff

**BILLY J. WILLIAMS**
United States Attorney
**RENATA GOWIE**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
(503) 727-1003

───────────────────

     [1] In the interest of privacy this Court uses only the first name and the initial of the last name of the nongovernmental party in this case. Where applicable, this Court uses the same designation for the nongovernmental party's immediate family member.

1 - OPINION AND ORDER

**MICHAEL W. PILE**
Acting Regional Chief Counsel
**BRETT E. ECKELBERG**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-3748

        Attorneys for Defendant

**BROWN, Senior Judge.**

Plaintiff Fernando C. C. seeks judicial review of the final decision of the Commissioner of the Social Security Administration (SSA) in which the Commissioner denied Plaintiff's applications for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

For the reasons that follow, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter to the Commissioner for further administrative proceedings.

## ADMINISTRATIVE HISTORY

On December 28, 2015, Plaintiff protectively filed his

application for DIB benefits.  Tr. 13, 153.[2]  Plaintiff alleges a
disability onset date of February 1, 2013.  Tr. 13, 153.
Plaintiff's application was denied initially and on
reconsideration.  An Administrative Law Judge (ALJ) held a
hearing on September 8, 2017.  Tr. 33-58.  Plaintiff and a
vocational expert (VE) testified at the hearing.  Plaintiff was
represented by an attorney at the hearing.

On November 16, 2017, the ALJ issued an opinion in which he
found Plaintiff is not disabled and, therefore, is not entitled
to benefits.  Tr. 13-28.  Plaintiff requested review by the
Appeals Council.  On August 23, 2018, the Appeals Council denied
Plaintiff's request to review the ALJ's decision, and the ALJ's
decision became the final decision of the Commissioner.  Tr. 1-
3.  *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

On September 28, 2018, Plaintiff filed a Complaint in this
Court seeking review of the Commissioner's decision.


## BACKGROUND

Plaintiff was born on April 23, 1980.  Tr. 27, 153.

---

[2] Citations to the official Transcript of Record (#12)
filed by the Commissioner on March 13, 2019, are referred to as
"Tr."

Plaintiff was 37 years old on his alleged disability onset date. Plaintiff has at least a high-school education.  Tr. 27. Plaintiff has past relevant work experience as a carpenter. Tr. 27.

Plaintiff alleges disability due to major depression and post-traumatic stress disorder (PTSD).  Tr. 59.

Except as noted, Plaintiff does not challenge the ALJ's summary of the medical evidence.  After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence.  *See* Tr. 19-25.


## STANDARDS

The initial burden of proof rests on the claimant to establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  To meet this burden, a claimant must demonstrate his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.  *McLeod v. Astrue*,

640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Brewes v. Comm'r of Soc. Sec. Admin.,* 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). "It is more than a mere scintilla [of evidence] but less than a preponderance." *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for evaluating a claimant's testimony, resolving conflicts in the medical evidence, and resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences

reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d

1047, 1051 (9th Cir. 2012). The court may not substitute its

judgment for that of the Commissioner. *Widmark v. Barnhart*, 454

F.3d 1063, 1070 (9th Cir. 2006).


**DISABILITY ANALYSIS**

**I.   The Regulatory Sequential Evaluation**

At Step One the claimant is not disabled if the

Commissioner determines the claimant is engaged in substantial

gainful activity (SGA). 20 C.F.R. § 404.1520(a)(4)(i). *See*

*also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir.

2011).

At Step Two the claimant is not disabled if the

Commissioner determines the claimant does not have any medically

severe impairment or combination of impairments. 20 C.F.R.

§ 404.1509, 404.1520(a)(4)(ii). *See also Keyser*, 648 F.3d at

724.

At Step Three the claimant is disabled if the Commissioner

determines the claimant's impairments meet or equal one of the

listed impairments that the Commissioner acknowledges are so

severe as to preclude substantial gainful activity. 20 C.F.R.

§ 404.1520(a)(4)(iii). *See also Keyser*, 648 F.3d at 724. The

criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. § 404.1520(e). *See also* Social Security Ruling (SSR) 96-8p. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1. In other words, the Social Security Act does not require complete incapacity to be disabled. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work he has done in the past. 20 C.F.R. § 404.1520(a)(4)(iv). *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). *See also*

*Keyser*, 648 F.3d at 724-25. Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform. *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines (or the grids) set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1).

## **ALJ'S FINDINGS**

At Step One the ALJ found Plaintiff has not engaged in substantial gainful activity since February 1, 2013, Plaintiff's alleged disability onset date. Tr. 15.

At Step Two the ALJ found Plaintiff has the severe impairments of "anxiety/posttraumatic stress disorder and depression." Tr. 15.

At Step Three the ALJ concluded Plaintiff's medically determinable impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1. Tr. 16. The ALJ found Plaintiff has the RFC to perform a full range of work at all exertional levels with the

following nonexertional limitations:  he is limited to performing simple, repetitive, routine work with only occasional interaction with supervisors, coworkers, and the general public. Tr. 18.

At Step Four the ALJ concluded Plaintiff is unable to perform his past relevant work.  Tr. 27.

At Step Five the ALJ found Plaintiff can perform other jobs that exist in the national economy such as janitor, floor waxer, and cafeteria attendant.  Tr. 28.  Accordingly, the ALJ found Plaintiff is not disabled.  Tr. 28.


**DISCUSSION**

Plaintiff contends the ALJ erred when he failed (1) to conclude Plaintiff's social anxiety disorder is a medically determinable and severe impairment at Step Two, (2) to provide clear and convincing reasons for rejecting Plaintiff's subjective symptom testimony, and (3) to evaluate properly the medical opinions of Chandra M. Oleksiewicz, M.D., and Kimberly Humann, M.D., Plaintiff's treating psychiatrists; Kenneth Robertson, MSW, LCSW, Plaintiff's treating social worker; Daniel Scharf, Ph.D., an examining psychologist; and Scott F. Kaper, Ph.D., and Irmgard E. Friedburg, Ph.D., consultative

psychologists.

## I. The ALJ did not err at Step Two when he found Plaintiff's social anxiety disorder was not a severe impairment.

Plaintiff contends the ALJ erred at Step Two when he found Plaintiff's social anxiety disorder was not a medically determinable impairment, and as a result, failed to include it as a severe impairment.

The Commissioner, in turn, contends the ALJ's determination that Plaintiff's alleged social anxiety disorder was not a medically determinable impairment is supported by substantial evidence in the record. The Commissioner also contends even if the ALJ erred when he failed to find Plaintiff's social anxiety disorder is a severe impairment, the error was harmless.

### A. Standards

The inquiry for Step Two is a *de minimis* screening device to dispose of groundless claims. *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987)(Step Two inquiry intended to identify claimants whose medical impairments are so slight that it is unlikely they would be found disabled). *See also Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005)(Step Two impairment "may be found not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.")(emphasis in original).

The claimant bears the burden to provide medical evidence to establish at Step Two that he has a severe impairment. 20 C.F.R. § 404.1512. An impairment or combination of impairments is "not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Webb*, 433 F.3d at 686. At Step Two the ALJ must consider the combined effect of the claimant's impairments on his ability to function without regard to whether each impairment alone is sufficiently severe. *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). *See also Smolen v. Chater*, 80 F.3d 1273, 1289-90 (9th Cir. 1996); 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. § 416.923.

To qualify as a medically determinable physical or mental impairment the alleged impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. Therefore, a physical or mental impairment must be established by objective medical evidence from an acceptable medical source." 20 C.F.R. §§ 404.1521, 416.921. A "statement of symptoms, a diagnosis, or a medical opinion" are not enough to establish a medically determinable impairment. *Id. See also* SSR 96-4p.

If the ALJ determines a claimant is severely impaired at Step Two, the ALJ continues with the sequential analysis and considers all of the claimant's limitations.  SSR 96-9p.  Step Two is "merely a threshold determination" as to whether the claimant is able to perform his past work.  *Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007).

B.    **Analysis**

The ALJ resolved Step Two in Plaintiff's favor when he found Plaintiff has severe impairments of anxiety, PTSD, and depression.  Tr. 15.

On August 14, 2017, Dr. Humann diagnosed Plaintiff in a Mental Residual Functional Capacity Assessment as having social anxiety disorder in addition to chronic and complex PTSD. Tr. 448.  The ALJ, however, did not include social anxiety disorder as a severe impairment.  The ALJ concluded Dr. Humann's diagnosis of social anxiety disorder and her assessment of Plaintiff's limitations were not supported by the medical records, including her own treatment notes.  Tr. 24.

Plaintiff contends the ALJ's failure to include social anxiety disorder as a severe impairment was harmful error. Plaintiff relies on *Hill v. Astrue*, 698 F.3d 1153 (9th Cir. 2012), to support his position.  In *Hill* the plaintiff was

diagnosed as having multiple severe mental impairments including panic disorder. The ALJ resolved Step Two in the plaintiff's favor, but he did not include panic disorder as one of the plaintiff's severe impairments. The ALJ ultimately found the plaintiff was not disabled. The district court upheld the ALJ's determination. On appeal the plaintiff asserted the ALJ's failure to include panic disorder as a severe impairment at Step Two was harmful error. The Ninth Circuit noted when an ALJ finds a severe medically determinable impairment at Step Two, "all medically determinable impairments must be considered in the remaining steps of the sequential analysis." *Id.* at 1161. The court, therefore, held when the ALJ excluded panic disorder from the plaintiff's list of impairments and instead characterized the plaintiff as impaired solely from anxiety, the ALJ erred by ignoring and discounting the plaintiff's other impairments resulting in an evaluation of the plaintiff's RFC that was "incomplete, flawed, and not supported by substantial evidence in the record." *Id.* In other words, the ALJ erred when he failed to consider the plaintiff's panic disorder in subsequent steps of the sequential analysis even though he did not find the panic disorder was a severe impairment.

Here although the ALJ did not find social anxiety

disorder was a severe impairment at Step Two, he considered

Plaintiff's limitations arising from his social anxiety in the

remaining steps of the sequential analysis, including in his

assessment of Plaintiff's RFC.  For example, the ALJ

specifically limited Plaintiff's interaction with supervisors,

coworkers, and the general public to "no more than occasional."

Tr. 18.

Accordingly, to the extent that the ALJ may have erred

when he found Plaintiff's social anxiety disorder was not a

severe impairment, the Court concludes it was harmless error

because the ALJ considered any limitations caused by Plaintiff's

social anxiety in subsequent steps of the sequential analysis.

**II.  The ALJ did not err when he found Plaintiff's testimony was not fully credible.**

Plaintiff contends the ALJ erred when he failed to provide

clear and convincing reasons for discounting Plaintiff's symptom

testimony.

**A.    Standards**

The ALJ engages in a two-step analysis to determine

whether a claimant's testimony regarding subjective pain or

symptoms is credible.  "First, the ALJ must determine whether

the claimant has presented objective medical evidence of an

underlying impairment 'which could reasonably be expected to

produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014)(quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). The claimant need not show his "impairment could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom." *Garrison*, 759 F.3d at 1014 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)). A claimant is not required to produce "objective medical evidence of the pain or fatigue itself, or the severity thereof." *Id*.

If the claimant satisfies the first step of this analysis and there is not any affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014-15. *See also Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006)("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each."). General assertions that the claimant's testimony is not credible are insufficient. *Parra v. Astrue,* 481 F.3d 742,

750 (9th Cir. 2007).  The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints."  *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

### B.    Analysis

At the hearing Plaintiff testified he has "always had problems maintaining a job."  Tr. 39.  In his Function Report Plaintiff indicated it is difficult for him to work "because of my anxiety/anger . . . [and] it spirals into deep depression where I am unable to get out of bed.  This also increases my anxiety, because I am often unaware of my triggers.  Going to different job sites and meeting new people causes stress and anxiety for me."  Tr. 174.  Plaintiff also indicated he is unable to complete tasks due to his PTSD, depression, and anxiety.  Tr. 174.

The ALJ concluded Plaintiff's impairments could reasonably be expected to cause his symptoms, but his testimony regarding the effects of his symptoms was not consistent with the medical record and other evidence.  Tr. 21-22.  For example, the ALJ concluded Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms "are not fully consistent with the evidence of record."  Tr. 22.  The ALJ

noted:

> Most everyone has good days and bad days. The
> [Plaintiff] stated his activities depend on if he
> is having a good day or a bad day. The
> [Plaintiff] has not shown, and medical records do
> not indicate, why his "bad days" are more extreme
> and limiting than those experienced by working
> people who do not consider themselves disabled.

Tr. 22. The ALJ, however, did not point to any specific testimony or evidence in the record to support this finding. The ALJ also discounted Plaintiff's symptom testimony on the basis that Plaintiff's daily activities were inconsistent with his symptom testimony. For example, Plaintiff reported to Dr. Humann that he was remodeling his house and doing all of the work himself, he went on a camping trip with his family where he enjoyed boating and being on the river, and he had fun interacting with his children. Tr. 23, 431, 439, 443. The ALJ also noted Plaintiff's wife stated Plaintiff could prepare meals, shop, perform household chores (laundry, vacuuming, mowing), care for the children, drive a car, manage finances, and get along with people. Tr. 22, 197-201. The ALJ also noted Plaintiff testified at the hearing and stated in his Function Report that he stopped working as a union carpenter in 2013 because he was "laid off" due to lack of work (Tr. 26, 39, 166-67) rather than for reasons related to his alleged disabling

condition.

The ALJ also noted the record reflects Plaintiff's mental-health conditions were controlled by his medications and that the medical evidence did not support Plaintiff's testimony regarding the severity of his symptoms. Tr. 23, 26. For example, in September 2016 and April 2017 Dr. Humann noted Plaintiff's medications "seem to be working well." Tr. 23, 435, 439. Dr. Humann's treatment records also showed good mental-health functioning including normal memory; logical thought processes; and good attention, concentration, and insight. Tr. 22-24.

On this record the Court concludes the ALJ did not err when he discounted Plaintiff's general symptom testimony and found it was not fully credible because the ALJ provided clear and convincing reasons supported by substantial evidence in the record for doing so.

### III. The ALJ erred when he failed to consider properly the opinions of Plaintiff's medical providers.

Plaintiff contends the ALJ failed to consider properly the opinions of Drs. Oleksiewicz, Scharf, Humann, Kaper, Friedburg, and others regarding Plaintiff's mental-health limitations; failed to develop the record regarding those limitations; and failed to include those limitations in his assessment of

Plaintiff's RFC.

**A.    Standards**

"In disability benefits cases . . . physicians may render medical, clinical opinions, or they may render opinions on the ultimate issue of disability — the claimant's ability to perform work." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). "In conjunction with the relevant regulations, [courts] have . . . developed standards that guide [the] analysis of an ALJ's weighing of medical evidence." *Ryan v. Comm'r of Soc. Sec.,* 528 F.3d 1194, 1198 (9th Cir. 2008). Specifically, the court must "distinguish among the opinions of three types of physicians:  (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Garrison*, 759 F.3d at 1012. "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Id.* Although the opinion of a treating physician is entitled to greater weight than that of an examining physician, the opinion of an examining physician is entitled to greater weight than that of a nonexamining physician. *Ryan,* 528 F.3d at 1198. "The weight afforded a

nonexamining physician's testimony depends 'on the degree to which [he] provide[s] supporting explanations for [his] opinions.'"  *Id.* (quoting 20 C.F.R. § 404.1527(d)(3)).

"If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence."  *Id.*  Even when contradicted, a treating or examining physician's opinion is still owed deference and will often be "entitled to the greatest weight . . . even if it does not meet the test for controlling weight."  *Orn v. Astrue,* 495 F.3d 625, 633 (9th Cir. 2007).  An ALJ can satisfy the "substantial evidence" requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Reddick,* 157 F.3d at 725.  "The ALJ must do more than state conclusions.  He must set forth his own interpretations and explain why they, rather than the doctors', are correct."  *Id.* (citation omitted).

**B.  Analysis**

**1.  Dr. Oleksiewicz**

Plaintiff contends the ALJ erred when he failed to include any restriction regarding Plaintiff's "poor coping

skills" in his assessment of Plaintiff's RFC, failed to include
such a limitation in the hypothetical posed to the VE, and
failed to provide legally sufficient reasons for rejecting
Dr. Oleksiewicz's opinion.  The Commissioner, however, contends
the ALJ's assessment of Plaintiff's RFC is supported by
"substantial evidence" in the record.

On December 3, 2015, Dr. Oleksiewicz performed a
psychiatric evaluation of Plaintiff.  Tr. 300-04.  She noted the
following:  Plaintiff was alert and fully oriented to person,
place, and time; he made good eye contact; he evidenced
psychomotor retardation; his mood was "fearful, sad, [and]
depressed" and his affect was dysthymic and anxious; his thought
processes were linear and goal-directed; there was not any
evidence of cognitive deficits; his recent and remote memory was
intact; and his judgment and insight were good.  Tr. 302.
Dr. Oleksiewicz diagnosed Plaintiff as having PTSD and "Major
Depressive Disorder, recurrent, severe without psychotic
features."  *Id.*  Dr. Oleksiewicz noted Plaintiff's risk factors
include his "intensity of psychiatric symptoms, psychosocial
stressors and poor coping skills."  Tr. 303.  Dr. Oleksiewicz
also opined Plaintiff's level of functioning showed "severe
impairment in multiple areas of daily life," his psychiatric

symptoms were "severe to disabling," and he had an "impaired ability to form relationships or seek support." Tr. 304.

Based on Dr. Oleksiewicz's assessment Plaintiff was admitted to a Partial Hospitalization/Intensive Outpatient Psychiatry program (PHP) on December 3, 2015. Tr. 20, 312. Plaintiff attended group-therapy sessions for one day, but he was uncomfortable participating in group programs and decided not to continue with PHP. On December 8, 2015, Plaintiff was considered stable and was discharged after one follow-up appointment. Tr. 312.

As noted, the ALJ is required to consider physicians' opinions and to assess the weight to give those opinions. 20 C.F.R. § 404.1527(c). The opinions of an examining physician may be rejected only for specific and legitimate reasons supported by substantial evidence in the record. 20 C.F.R. § 404.1527(d)(3). Although the ALJ mentioned Dr. Oleksiewicz's evaluation (Tr. 20), he did not make any findings based on Dr. Oleksiewicz's opinion, he did not include any limitations in his assessment of Plaintiff's RFC based on Dr. Oleksiewicz's opinion, and he did not include any of those limitations in his hypothetical to the VE. The ALJ merely recited Dr. Oleksiewicz's findings, both positive and negative,

without explanation.

On this record the Court concludes the ALJ erred when he failed to consider properly the medical opinion of Dr. Oleksiewicz and failed to provide specific and legitimate reasons supported by substantial evidence in the record for rejecting her opinion.

## 2. Social Worker Robertson

On January 15, 2016, Robertson, a licensed clinical social worker, performed a Mental Health AOD Assessment of Plaintiff (Tr. 361-67) and provided subsequent psychotherapy sessions. Tr. 376-81. Robertson noted in his assessment that Plaintiff's symptoms "cause clinically significant distress or impairment in social, occupational, or other important areas of functioning." Tr. 362.

The ALJ merely referenced Plaintiff's treatment with Robertson and noted "medications were reducing symptoms of depression and anxiety." Tr. 20, 367.

### a. Standards

Medical sources are divided into two categories: "acceptable medical sources" and "other sources." 20 C.F.R. §§ 416.913. Acceptable medical sources include licensed physicians and psychologists. 20 C.F.R.

§§ 416.913(a). Medical sources classified as "other sources"
include, but are not limited to, nurse practitioners,
therapists, licensed clinical social workers, and chiropractors.
20 C.F.R. §§ 416.913(d). The SSA notes:

> With the growth of managed health care in
> recent years and the emphasis on containing
> medical costs, medical sources who are not
> acceptable medical sources, such as nurse
> practitioners, physician assistants, and
> licensed clinical social workers, have
> increasingly assumed a greater percentage of
> the treatment and evaluation functions
> previously handled primarily by physicians
> and psychologists. Opinions from these
> medical sources, who are not technically
> deemed acceptable medical sources under our
> rules, are important and should be evaluated
> on key issues such as impairment severity
> and functional effects, along with the other
> relevant evidence in the file.

SSR 06-03p, at *3. Factors the ALJ should consider when
determining the weight to give an opinion from those "important"
sources include the length of time the source has known the
claimant, the number of times and frequency that the source has
seen the claimant, the consistency of the source's opinion with
other evidence in the record, the relevance of the source's
opinion, the quality of the source's explanation of his opinion,
and the source's training and expertise. SSR 06-03p, at *4.

On the basis of the particular facts and the
above factors, the ALJ may assign a not-acceptable medical

source either greater or lesser weight than that of an
acceptable medical source.  SSR 06-03p, at *5-6.  The ALJ,
however, must explain the weight assigned to such sources to
allow a claimant or subsequent reviewer to follow the ALJ's
reasoning.  SSR 06-03p, at *6.  "The ALJ may discount testimony
from . . . 'other sources' if the ALJ 'gives reasons germane to
each witness for doing so.'"  *Molina*, 674 F.3d at 1111 (quoting
*Turner v. Comm'r Soc. Sec. Admin.*, 613 F.3d 1217, 1224 (9th Cir.
2010)).

### b.  Analysis

Plaintiff contends the ALJ failed to
consider Robertson's opinion regarding "impairment severity and
functional effects" and failed to provide germane reasons for
rejecting Robertson's assessment.  The Commissioner, however,
contends the ALJ provided a germane reason for discounting
Robertson's opinion based on the fact that medications reduced
Plaintiff's symptoms.

Social Security regulations state "symptoms"
are a claimant's "own description of [their] physical or mental
impairment."  20 C.F.R. § 416.902(n).  Symptoms, however, "will
not alone" establish disability.  20 C.F.R. § 416.929(a).

Here the ALJ referenced Robertson's

treatment of Plaintiff but he did not discuss the limitations
assessed by Robertson based on Plaintiff's symptoms. Although
the ALJ noted the record indicates medications reduced
Plaintiff's symptoms, the record does not reflect the ALJ
discounted Robertson's opinion based on that fact.

Accordingly, on this record the Court
concludes the ALJ erred when he failed to assess properly
Robertson's opinion and failed to provide a germane reason for
discounting his opinion.

### 3. Drs. Kaper and Friedburg

Plaintiff contends the ALJ erred when he gave
preference to the opinions of the nonexamining physicians over
the opinions of Dr. Humann, a treating physician, and
Dr. Scharf, an examining physician, on the ground that the
opinion of a nonexamining physician alone does not constitute
substantial evidence to reject the opinion of a treating or
examining physician. As noted, however, the opinion of a
nonexamining medical expert may constitute substantial evidence
when it is considered with other independent evidence in the
record. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir.
2001). Plaintiff also contends the opinions of Drs. Kaper and
Friedburg in 2016 were based on "incomplete evidence" and

subsequently discounted by Drs. Scharf and Humann.

In March 2016 Dr. Kaper, a nonexamining state-agency psychologist, reviewed Plaintiff's claim.  He opined Plaintiff could maintain concentration, persistence, and pace for 1-2 step tasks.  Tr. 67.  In May 2016 Dr. Friedburg, another nonexamining state-agency psychologist, also reviewed Plaintiff's claim and made the same determination.  Tr. 81.

The ALJ gave the opinions of Drs. Kaper and Freidburg "partial weight" on the grounds that their opinions accounted for symptoms caused by both anxiety and depression and were generally supported by the medical record.  Tr. 22. Accordingly, the ALJ's assessment of Plaintiff's RFC included a limitation to simple, repetitive, and routine work.  *Id.*  The ALJ also pointed to Dr. Scharf's opinion that Plaintiff does not have any difficulty understanding and remembering simple instructions.  Tr. 25, 458.

On this record the Court concludes the ALJ considered properly the opinions of Drs. Kaper and Friedburg in his assessment of Plaintiff's RFC and provided specific and legitimate reasons supported by substantial evidence in the record for his conclusions.

### 4. Dr. Humann

Plaintiff contends there is not any substantial
evidence in the record to support the ALJ's rejection of
Dr. Humann's assessment of Plaintiff.

Dr. Humann has been Plaintiff's treating
psychiatrist at Oregon Health and Sciences University since
January 2016.  Tr. 448.  In February 2016 she diagnosed
Plaintiff with "chronic, complex PTSD."  Tr. 425.  On August 15,
2017, Dr. Humann completed a Mental Residual Functional Capacity
Assessment and noted Plaintiff had social anxiety disorder in
addition to his PTSD.  Tr. 448.  She opined Plaintiff is
"markedly limited" in his ability to maintain attention and
concentration for extended periods of time, to remember and to
carry out short and simple instructions, to sustain an ordinary
routine without special supervision, to make simple work-related
decisions, to get along with coworkers or peers, and to respond
appropriately to changes in the work setting.  Tr. 449-50.  In
addition, Dr. Humann opined Plaintiff is "extremely limited" in
his ability to perform activities within a schedule, to maintain
regular attendance, to be punctual, to work in coordination or
proximity with others, to complete a normal work day and work
week without interruptions from his psychological symptoms, to

perform at a consistent pace without an unreasonable number of
rest periods, to interact with the general public, to accept
instructions and to respond appropriately to criticism from
supervisors, to adhere to basic standards of neatness and
cleanliness, and to tolerate normal levels of stress.  Tr. 450-
51.  Dr. Humann concluded Plaintiff's impairments would
substantially interfere at least 20% of the time with his
ability to work, and, as a result, he would miss work 20 days
per month.  Tr. 451.

The ALJ gave "no weight" to Dr. Humann's opinion
on the ground that it was not supported by the record including
her own treatment notes and was inconsistent with Plaintiff's
activities of daily living.  Tr. 22-24.  The ALJ pointed to
evidence in Dr. Humann's treatment notes that mental-status
examinations consistently showed normal memory, a good "fund" of
knowledge, good abstraction, logical and goal-directed thought
processes, good attention and concentration, intact memory, and
good insight and judgment.  Dr. Humann found Plaintiff was
cooperative and fully oriented; that he made good eye contact;
and that he was neatly groomed, polite, and engaged.  Tr. 23.

The ALJ also noted Plaintiff told Dr. Humann in
September 2016 that his medications were "working well" and that

he was remodeling his home and doing the work himself.  In July
2017 Plaintiff reported he was no longer having significant
panic attacks or anxiety, that his social anxiety dissipates
"once he is in the situation," and that his mood was good.
Tr. 23.

On this record the Court concludes the ALJ
provided specific and legitimate reasons supported by
substantial evidence in the record for rejecting Dr. Humann's
assessment.

### 5.  Dr. Scharf

Plaintiff contends the ALJ concluded he lacked
sufficient information to determine the accuracy of
Dr. Scharf's opinion regarding Plaintiff's difficulties with
persistence, but the ALJ failed to develop the record based on
that conclusion.  Plaintiff also contends the ALJ failed to
include in his evaluation of Plaintiff's RFC any limitation
regarding Plaintiff's moderate difficulty in responding to usual
work situations and to changes in a routine work setting even
though the ALJ gave great weight to Dr. Scharf's assessment as
to those limitations.

In a Medical Source Statement on August 21, 2017,
Dr. Scharf assessed Plaintiff with moderate impairment in his

ability to understand, to remember and to carry out complex

instructions, and to make complex work-related judgments.

Tr. 458.  He noted Plaintiff was able to understand and to

remember basic instructions, but he likely would have difficulty

with complex instructions "due to concentration problems."

Tr. 458.  Dr. Scharf also assessed Plaintiff with moderate

limitations in his ability to interact with coworkers,

supervisors, and the public and in his ability to respond

appropriately to usual work situations and to changes in a

routine work setting.  Tr. 459.  On August 24, 2017, Dr. Scharf

performed a psychodiagnostics examination of Plaintiff and

diagnosed him with "PTSD, Persistent Depressive Disorder, and

Generalized Anxiety Disorder."  Tr. 453-60.  He concluded

Plaintiff was "able to sustain concentration and attention and

likely would have difficulties with persistence in his attention

after 1-2 hours."  He also found Plaintiff was able to engage in

appropriate social interaction.  Tr. 457.

　　　　　The ALJ gave "great weight" to Dr. Scharf's

assessments in his Medical Source Statement on the ground that

they were supported by the medical record, and also Dr. Humann's

treatment notes.  Tr. 25.  The ALJ, however, gave "little

weight" to Dr. Scharf's assessment that Plaintiff would have

difficulties with persistence and attention after one or two hours because Dr. Scharf's assessment was contradicted by his own opinion. Tr. 24. For example, the ALJ pointed to Dr. Scharf's observation that Plaintiff was able to understand and to remember instructions and was able to sustain concentration and attention during his examination. Tr. 24, 457. The ALJ also pointed to Dr. Scharf's statement in the Medical Source Statement that Plaintiff did not have any difficulty with concentration, persistence, and pace during his examination. Tr. 24, 459. Dr. Scharf also noted Plaintiff's attention and concentration were only moderately disrupted during his examination. Thus, Dr. Scharf did not explain how Plaintiff's performance during the examination supported a limitation with persistence and attention. *Id.* The ALJ also noted Plaintiff's attention and concentration were indicated as "good" during examinations by Dr. Humann in July 2016, September 2016, April 2017, and July 2017. Tr. 24.

The ALJ also discounted Dr. Scharf's opinion regarding Plaintiff's limitation in persistence after 1-2 hours on the ground that Dr. Scharf did not explain whether this limitation applied to either simple and/or complex tasks. Tr. 24. Dr. Scharf, however, made such a distinction in his

Medical Source Statement regarding Plaintiff's ability to
process simple and complex instructions and stated Plaintiff
would have concentration issues only with complex instructions.
Tr. 25, 458.

Plaintiff contends the record is ambiguous based
on the ALJ's statement that "it is impossible to determine the
accuracy of [Dr. Scharf's] assessment," and, therefore,
according to Plaintiff, the ALJ was required to develop the
record further.  Tr. 24-25.  The Court finds the ALJ's
statement, however, reflects the ALJ's inability to reconcile
Dr. Scharf's contradictory statements regarding Plaintiff's
limitation in persistence and attention rather than reflecting
an ambiguity in the record.

On this record the Court concludes the ALJ did
not err in his assessment of Dr. Scharf's opinion because the
ALJ provided specific and legitimate reasons supported by
substantial evidence in the record to support his conclusions.

In summary, the Court concludes the ALJ failed to
consider properly the medical opinions of Dr. Oleksiewicz, one
of Plaintiff's treating physicians, and Social Worker Robertson
and failed to provide specific and legitimate reasons supported
by substantial evidence in the record for discounting their

opinions.

## REMAND

The Court must determine whether to remand this matter for further proceedings or to remand for the calculation of benefits.

The decision whether to remand for further proceedings or for immediate payment of benefits generally turns on the likely utility of further proceedings.  *Carmickle*, 533 F.3d at 1179. The court may "direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose."  *Smolen*, 80 F.3d at 1292.

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed."  *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).  The court should grant an immediate award of benefits when

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required
>
> to find the claimant disabled were such evidence credited.

*Id.* The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings. *Id.* at 1178 n.2.

Here the Court has concluded the ALJ erred when he failed to consider properly the medical opinions of Dr. Oleksiewicz and Social Worker Robertson regarding Plaintiff's limitations. Accordingly, on this record the Court remands this matter for further administrative proceedings to permit the ALJ to do so.

## CONCLUSION

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings.

IT IS SO ORDERED.

DATED this 26th day of September, 2019.

/s/ Anna J. Brown

_____
ANNA J. BROWN
United States Senior District Judge